# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CRAIG FRENTZEL, | ) |
|       Plaintiff, | ) |
| v. | )    No. 4:05-CV-2304 CAS |
| GLENN BOYER, et al., | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Glenn Boyer's motion for summary judgment. Plaintiff opposes the motion. For the following reasons the Court will grant the motion for summary judgment with respect to plaintiff's claims against defendant Boyer, and will dismiss plaintiff's claims against the two Doe defendants without prejudice.

## Background

Plaintiff Craig Frentzel filed this action pro se pursuant to 42 U.S.C. § 1983 alleging that defendant Glenn Boyer, the Sheriff of Jefferson County, Missouri, and defendants Doctor John Doe and Nurse Jane Doe violated his constitutional rights by failing to provide medication and treatment from April 21, 2005 until April 28, 2005 while he was a pretrial detainee at the Jefferson County Jail (the "Jail"). Plaintiff seeks compensatory and punitive damages and costs.

On July 11, 2006, defendant Boyer filed the instant motion for summary judgment in which he argues that because plaintiff failed to exhaust the administrative remedies available to him prior to the filing of this lawsuit, plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Defendant also moves for judgment on the merits of plaintiff's

complaint, arguing that there is no evidence defendant was deliberately indifferent to plaintiff's medical needs; defendant cannot be liable on plaintiff's § 1983 claims under the theory of respondeat superior liability; as a pretrial detainee plaintiff is barred from bringing a claim under the Eighth Amendment; this Court lacks subject matter jurisdiction over plaintiff's claim for alleged violations of Article 1, Section 21 of the Missouri Constitution and § 221.020, Mo. Rev. Stat. (2000); and the PLRA, 42 U.S.C. § 1997e(e), bars plaintiff's action because plaintiff has failed to make a showing of prior physical injury.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029

(8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

**Facts**[1]

On April 21, 2005, plaintiff Craig Frentzel ("Frentzel") was transported from the Eastern Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri, to the Jefferson County Jail in Hillsboro, Missouri to appear in Jefferson County Circuit Court on criminal charges. Frentzel was a pretrial detainee during his confinement at the Jail. Upon his arrival, the booking officer filled out a Jefferson County Jail Medical Questionnaire. Def. Ex. C. Frentzel told the booking officer that

---

[1]Although plaintiff submits defendant Boyer's Response to Plaintiff's First Set of Requests for Admissions, Pl. Ex. E, this exhibit includes only Boyer's responses and not the Request for Admissions to which he was responding. The Court cannot consider the responses without having the text of the Request for Admissions, because the responses, standing alone, are meaningless. The Court also notes that although plaintiff refers to a Plaintiff's Exhibit D, there was no Exhibit D attached to plaintiff's documents submitted in opposition to the motion for summary judgment.

3

he was taking medications for bipolar and anxiety disorders, and that if he did not take them it would be detrimental to his well-being. Frentzel Aff., ¶ 5. Frentzel did not have the medication in his possession at the time he was transferred from the ERDCC to the Jail, nor was the medication sent on plaintiff's behalf. Def. Ex. C; Frentzel Aff., ¶ 6.. The booking officer told Frentzel that he would need to see a doctor before the medication could be administered to him. Complaint at 10 (Suppl. at 3).

The Jail publishes a Prisoner/Pretrial Detainee Handbook ("Jail Handbook"), which is supposed to be furnished to each prisoner/pretrial detainee upon entering the Jail. Def. Ex. A at ¶ 6; Def. Ex. B at 14. Section 14.E. of the Jail Handbook outlines the health services available to prisoners and states in part, "Our staff doctor will be in the facility (1) day each week." This section further states, "If you need medical attention, you will need to fill [out] a medical request form and submit it. Emergency medical problems will be treated or taken care of immediately." Def. Ex. B at 14. When Frentzel was booked into the Jail, however, he was not provided a copy of the Jail Handbook. Frentzel Aff., ¶ 2. Other pretrial detainees or prisoners have also not received the Jail Handbook. Pl. Exs. B, C.

On April 24, 2005, Frentzel filed a Medical Services Request, requesting four specific medications. Def. Ex. E. In the request Frentzel indicted that it was "very important" that he receive his medications for bipolar disorder. Id. On other occasions Frentzel verbally informed Jail staff that he had mental disorders which required medication, but his requests were either ignored, or he was told by staff members that they could not provide him with any assistance. Frentzel Aff, ¶ 3.

On April 26, 2005, an initial psychological evaluation of Frentzel was conducted by a nurse who plaintiff believes was Shannon LaPlante. Frentzel told the nurse that he was taking medications

4

for bipolar disorder, and had last taken the medications on April 21, 2005. Frentzel also said that the medications were prescribed by a Dr. Matthews at Community Treatment, Inc. (COMTREA), an outpatient mental health and substance abuse treatment center in Arnold, Missouri. The evaluation indicated that Frentzel complained of anxiety attacks and poor sleep, that he had an "OK" appetite, and denied being suicidal, homicidal, or suffering from hallucinations or delusions. The evaluation indicated that Frentzel's speech and thought content were normal, and his affect was depressed. The evaluation indicated a diagnosis of bipolar disorder, and recommended that Frentzel's records from COMTREA be requested to document his previous treatment. Frentzel was told that he would have to be seen by the doctor, or his medical records would have to be obtained before he could be given the medications. Def. Ex. F at 4. The nurse told plaintiff that he would probably receive his medications that evening or in the morning. Complaint at 11 (Suppl. at 4). Plaintiff was not seen by Kay McIntyre while at the Jail, although the initial psychological evaluation appears to have been signed by McIntyre, who plaintiff alleges is a psychologist. Frentzel Aff., ¶ 9; Pl.'s Statement of Material Facts at 6, ¶ 11.

On April 28, 2005, Frentzel was released from the Jail to the custody of the Missouri Department of Corrections. A facsimile cover sheet dated April 29, 2005, and addressed to "medical records" at telephone number (636) 296-0102, requested medical records but does not specify whose records were sought. Def. Ex. G. This facsimile cover sheet was in plaintiff's Inmate File at the Jail. Def. Ex. A, ¶ 8. Frentzel did not receive the medications while he was confined at the Jail, from April 21, 2005 through April 28, 2005. Complaint at 12 (Suppl. at 5). Frentzel did not file any grievance pursuant to the Jail's grievance procedure relating to the conditions alleged in his complaint during

5

or after his confinement in the Jail, Def. Ex. A at ¶ 7, because he did not know about the grievance procedure. Frentzel Aff., ¶¶ 2, 11-12.

Frentzel does not allege that he had any personal interaction with defendant Boyer during plaintiff's detention at the Jail. Frentzel also does not allege that Boyer had any personal knowledge of Frentzel's condition or requests for medication.

The Jail does not have medical or psychiatric policies, or policies for dispensing medication. Pl. Ex. F, Boyer's Response to Req. for Prod. of Docs. at 3, 5 ¶¶ 19-20; 30. At all relevant times in 2005, there was a contract in effect between Jefferson County, Missouri, the Jefferson County Sheriff, and Health Professionals, LTD. ("HPL"), under which HPL provided health care for Jefferson County's inmates and detainees (the "Jail Population"). See Pl. Ex. G, "Agreement for the Provision of Inmate Health Services at the Jefferson County Missouri Jail" and Addendum thereto (collectively the "Agreement"). Under the Agreement, HPL was to provide a comprehensive health appraisal of each person in the Jail Population, regularly scheduled sick call, regular physician visits to the Jail, medical records management, administrative support services, and other services. Pl. Ex. G, ¶ 1.1.1. HPL was also to provide, among other things, a physician on call twenty-four hours per day, seven days per week, id., ¶ 1.1.3a.; and mental health services to the Jail Population, id., ¶ 1.3.7. HPL agreed to "establish a training program for the County Correctional Officers and Jail Staff in accordance with NCCHC standards and as mutually agreed upon between HPL" and Jefferson County. Id., ¶ 1.3.2.

**Discussion**

As a threshold matter, plaintiff argues that defendant improperly supports his motion by relying on the Jail Handbook and the Agreement with HPL, which plaintiff asserts were not disclosed

to him as part of defendant's mandatory disclosures or in response to discovery requests. Citing Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998), plaintiff argues that the Court should not allow defendant to use these documents in connection with the summary judgment motion. Plaintiff also argues that defendant violates the Court's Local Rules by using small computer pitch to avoid the fifteen-page limitation on memoranda. See E.D. Mo. L.R. 4.01(D). Plaintiff also claims that defendant's memorandum in support of his motion for summary judgment violates Rules 8(e)(1), 10(b), and 56(e), Fed. R. Civ. P. Defendant responds by stating that the Court, in its Memorandum and Order dated September 26, 2006, previously found these same arguments to be without merit.

With respect to the Agreement with HPL, the Court notes that plaintiff bases one of his main arguments on language in the Agreement. The Court will therefore consider it. The Court has found that plaintiff did not receive the Jail Handbook, and therefore it does not factor in the Court's decision. This Court's Local Rules do not address the font or pitch size of typeface, and the Court finds that defendant has not abused the page limitation rule with his ten-page memorandum. Moreover, the Court retains discretion to allow a party to exceed the page limits. Plaintiff's other arguments are without merit.

### A. Exhaustion of Administrative Remedies

Defendant argues that plaintiff has failed to exhaust the administrative remedies available to him in the form of the Jail's grievance system prior to the filing of this lawsuit. Defendant asserts that as a result, plaintiff's claims are barred by the PLRA, 42 U.S.C. § 1997e(a). Defendant asserts that because Frentzel was a "prisoner" for purposes of the PLRA, he was required to exhaust his administrative remedies provided by the Jail prior to bringing this §1983 claim. Defendant states that the Jail had a grievance procedure in place at the time of plaintiff's confinement which provided

inmates with the opportunity to file a grievance if they had a complaint regarding anything occurring in the Jail. Defendant submits the affidavit of Lt. Robert McKlin, Jail Commander, to confirm that plaintiff did not file a grievance. Def. Ex. A, ¶ 7. Citing Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), defendant argues that because Frentzel did not exhaust his administrative remedies prior to filing his complaint, the Court must dismiss this action without reaching its merits because it fails to state a claim.

In response, plaintiff argues that because he was not given a copy of the Jail Handbook while he was detained at the Jail, he did not know there was a grievance procedure in place that had to be exhausted. Plaintiff argues that he is not required to plead exhaustion, and that he must only exhaust administrative remedies that were available to him. See Booth v. Churner, 532 U.S. 731 (2001). According to plaintiff, he should not be found to have failed to exhaust his administrative remedies because he was not made aware that there was such a remedy. See Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001). Even if plaintiff had filed a grievance, he argues, he would have not been able to exhaust it because the Jail's grievance procedure does not allow for a prisoner to continue his grievance after he has left the Jail, citing Brownell v. Krom, 446 F.3d 305, 311 (2d Cir. 2006), and Lodato v. Ortiz, 314 F.Supp.2d 379, 384 (D.N.J. 2004).

The Court finds that when the facts are viewed in the light most favorable to the plaintiff, a genuine issue of material fact exists as to whether plaintiff exhausted all of the administrative remedies that were available to him. Plaintiff's affidavit, along with those of fellow Jail detainees Donald E. Mauzy and Randy Honeycutt, state that they were never given a Jail Handbook or otherwise informed of the Jail's grievance procedures.

The Eighth Circuit has consistently held that § 1997e(a) of the PLRA "does not require exhaustion of all remedies; it requires the exhaustion of such administrative remedies as are available." Miller, 247 F.3d at 740 (internal quotation omitted). The Eighth Circuit has stated, "We believe that a remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a)." Id. (internal quotations omitted). Plaintiff has submitted sufficient evidence to raise a genuine issue of material fact as to whether he has exhausted available remedies, as he alleges he was prevented from utilizing the Jail's grievance procedure because he was not provided with a copy of the Jail Handbook or otherwise informed of the existence of the procedure.

The Court is not persuaded by defendant's argument that the Eighth Circuit's ruling in Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001), warrants a finding that plaintiff's complaint should be dismissed. In Chelette, the Eighth Circuit stated, "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Id. In Chelette, however, unlike the present case, there was no evidence that the prisoner plaintiff did not know and was not informed of the existence of administrative remedies. As a result, Chelette is factually distinguishable and not controlling.

The Court finds that Frentzel has raised a genuine issue of material fact as to whether he exhausted the administrative remedies that were "available" to him. The Court therefore rejects this aspect of defendant's motion for summary judgment and turns to the merits of plaintiff's complaint.

B. Deliberate Indifference to a Serious Medical Need

Plaintiff alleges in his complaint that Boyer's failure to provide him with proper and adequate medical care constituted deliberate indifference to plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments and Missouri law. In the summary judgment motion, Boyer asserts in part that plaintiff cannot assert this claim under the Eighth Amendment because plaintiff was a pretrial detainee, not a prisoner.

Deliberate indifference to a serious medical need is properly evaluated under the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97, 106 (1976), as it constitutes an "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. Id. at 105 (citations and internal quotations omitted). Because plaintiff was a pretrial detainee, his claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006). "Under the Fourteenth Amendment, pretrial detainees are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." Id. (internal quotation marks and quoted case omitted).

The Eighth Circuit has held that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The standard is the same for pretrial detainees and prisoners because both groups are restrained by the state and rendered unable to care for their own basic needs:

> [T]he governmental duty to protect at issue . . . is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and general well-being: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care,

10

and reasonable safety -- it transgresses the substantive limits on state action set by the
Eighth Amendment and the Due Process Clause."

Id. at 344-45 (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) (citations omitted)). "Pretrial detainees and convicted inmates, like all persons in custody, have the same right to these basic human needs. Thus, the same standard of care is appropriate." Butler, 465 F.3d at 345. Accordingly, the Court applies the deliberate indifference standard to plaintiff's claims under the Fourteenth Amendment.

To prevail on a deliberate indifference claim, a plaintiff must establish two elements: "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, plaintiff must prove that the defendant acted, subjectively, with deliberate indifference to his serious medical needs. Id.; see Estelle, 429 U.S. at 106. A prison official exhibits deliberate indifference when the official actually "knows of and disregards" a prisoner's serious medical needs. Farmer, 511 U.S. at 837; Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Mere negligence or inadvertence does not constitute deliberate indifference and will not support a § 1983 claim. Wilson, 501 U.S. at 298-99.

Delaying access to medical care or intentionally interfering with prescribed treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104-05. A medical need is serious only if it is diagnosed by a physician as requiring treatment, or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).

11

A mental health or psychological disorder or disease may constitute a serious medical need. Smith v. Jenkins, 919 F.2d 90, 92-93 (8th Cir. 1990); White v. Farrier, 849 F.2d 322, 325 (8th Cir. 1988). For purposes of the instant motion for summary judgment, the Court assumes that plaintiff's bipolar disorder is a serious medical need, and defendant does not dispute this point. Boyer concedes for purposes of the instant motion "that plaintiff's lack of medication precipitated a substantial risk of harm to plaintiff," and therefore the "first part of the [deliberate indifference] standard would be met." Mem. Supp. Mot. Summ. J. at 5. See Estelle, 429 U.S. at 104-05 (deliberate indifference includes intentional interference with prescribed treatment); see also Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) (allegation that prison official ignored instructions of prisoner's treating physician by not dispensing prescribed medication is sufficient to state deliberate indifference claim); Hudson v. McHugh, 148 F.3d 859, 863-64 (7th Cir. 1998) (where inmate alleged jail intake officers and nurse knew about his epilepsy, knew he was not getting his prescribed medication, and did nothing about it despite his repeated requests, inmate stated Eighth Amendment claim).

The Court therefore examines the second element of the Farmer test, whether Boyer actually knew of and disregarded plaintiff's serious medical need. Boyer states that plaintiff fails to allege that he was aware of plaintiff's condition or that he disregarded it. Boyer argues that without such knowledge, he cannot be found to have been deliberately indifferent. Boyer also argues that because the doctrine of respondeat superior is inapplicable to § 1983 claims, the knowledge and actions of the Jail staff are irrelevant to plaintiff's claims against him, citing Vaughn, 438 F.3d at 851.

Plaintiff responds that he is not attempting to recover against Boyer under a theory of respondeat superior, but that under § 221.020, Mo. Rev. Stat. (2000), defendant is liable for the actions of his staff, citing Tatum v. Houser, 642 F.2d 253, 254 (8th Cir. 1981).

The statute which plaintiff cites provides in pertinent part, "the sheriff of each county . . . shall have the custody, rule, keeping and charge of the jail within his county, and of all the prisoners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible." § 221.020, Mo. Rev. Stat. Plaintiff argues that the Jail staff's knowledge can be imputed to Boyer under this statute. Even assuming that respondeat superior liability is created by the statute, such liability is not actionable under 42 U.S.C. § 1983. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978); Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006). The Eighth Circuit has stated, "Respondeat superior is not applicable to § 1983 claims. Further, a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (internal citation omitted). In addition, violations of state statutes do not by themselves state a claim under § 1983. Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995).

The only basis for holding a sheriff liable under § 1983 for the unconstitutional conduct of his subordinates outside of his direct control is through a failure to train or through the implementation of an unconstitutional policy or custom. See Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998). Plaintiff's attempt to impose § 1983 liability on Boyer based on the state statute therefore fails.

1. Failure to Train or Supervise

Plaintiff alleges in the complaint that Boyer is liable for failure to properly train, supervise, direct or control the acts and actions of Dr. John Doe and Nurse Jane Doe, who are alleged to have directly caused plaintiff's claimed deprivations. The relevant portion of the complaint alleges:

> That the defendant Boyer as the duly elected Sheriff of the Jefferson County Jail, Hillsboro, Missouri, . . . is additionally liable under the legal theory of failure to properly train, supervise, direct or control the acts and actions of Doctor John Doe

13

and Nurse Jane Doe, whom caused the deprivation in their refusal to provide proper and adequate medical attention to plaintiff upon request made to defendants Doctor John Doe and Nurse Jane Doe.

Complaint at 13 (Suppl. at 6).

Boyer asserts that plaintiff cannot recover under a theory of failure to train or supervise because his complaint does not contain the necessary elements for such claims, and does not allege that any custom or practice at the Jail resulted in the alleged constitutional violations. Defendant argues that plaintiff's complaint only alleges that defendant is responsible for training and supervision, and not that defendant failed to train or supervise. Defendant further argues that plaintiff offers no evidence that defendant was responsible for training or supervising Dr. John Doe and Nurse Jane Doe, who are alleged to have failed to provide plaintiff with proper medical treatment, and that these defendants are independent contractors over whom he had no control.

Defendant Boyer may be held liable under § 1983 if his failure to train or supervise the offending actors caused the deprivation. See Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994), cert. denied, 514 U.S. 1004 (1995). Under a liberal reading of the complaint, plaintiff has not alleged any facts to indicate that Boyer directly participated in any of the alleged constitutional violations against plaintiff. Plaintiff does allege, however, that Boyer's failure to train and supervise Dr. John Joe and Nurse Jane Doe resulted in such a deprivation.

In order to recover under a theory of failure to train or supervise, plaintiff must demonstrate that defendant "was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Wever v. Lincoln County, Neb., 388 F.3d 601, 606 (8th Cir. 2004) (internal quotation omitted).

14

The Court concludes that plaintiff has failed to demonstrate that Boyer was "deliberately indifferent to or tacitly authorized the offending acts." See Wever, 388 F.3d at 606. The Court cannot say that hiring a private entity to provide health services and medical care to the Jail Population amounts to deliberate indifference. Moreover, there is no indication from the record that Boyer had notice his policies, training procedures or supervision "were inadequate and likely to result in a constitutional violation." Id. (stating that such a showing is required to impose individual liability on a supervisor). Further, the Eighth Circuit has stated that "in most circumstances, a single incident does not provide a supervisor with notice of deficient training or supervision: '[A] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability.'" Id. at 607 (quoting Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989)). There is no allegation that Boyer was aware of any other incidents concerning the deprivation of medications. Without evidence that Boyer had notice that any training procedures or supervision were inadequate and likely to result in a constitutional violation, plaintiff's action cannot survive summary judgment. See Wever, 388 F.3d at 606.

Plaintiff contends that under section 1.3.2 of the Agreement, staff under defendant's supervision are offered medical training, but defendant's responses to plaintiff's request for production of documents demonstrates that defendant has no policies in place regarding such training for his subordinates.[2] The Court rejects plaintiff's contention as unsupported. The documents relied

---

[2]Section 1.3.2 of the Agreement, Pl. Ex. G at 3, states in pertinent part:

1.3.2 TRAINING FOR SHERIFF'S DEPUTIES/JAILERS. HPL will establish a training program for the COUNTY Correctional Officers and Jail staff in accordance withe NCCHC standards and as mutually agreed upon between HPL and the COUNTY.

Plaintiff's request for production of documents No. 17 requested "All documents relating to defendants receiving training and education in the field of medicine." Defendant responded,

15

on by plaintiff merely establish that HPL was contractually obligated to provide medical training to the Jail staff. The documents do not establish or serve to raise a genuine issue of material fact as to whether the training procedures and supervision were inadequate and likely to result in constitutional violations, or whether defendant Boyer had notice of the alleged inadequacies. Because plaintiff cannot establish that defendant had notice that any training procedures and supervision were inadequate and likely to result in a constitutional violation, it cannot be found that defendant was deliberately indifferent to plaintiff's serious medical condition. See Wever, 388 F.3d at 606.

The Court finds that plaintiff has failed to allege and has not offered any evidence to establish that Boyer had any knowledge of plaintiff's serious medical condition, or that Boyer disregarded it. Further, plaintiff has not offered any evidence to establish that Boyer's failure to train or supervise caused a deprivation of plaintiff's constitutional rights. As a result, plaintiff cannot establish that Boyer was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed to plaintiff, and that Boyer actually drew the inference of a substantial risk of serious harm. See Farmer, 511 U.S. at 837. Boyer is therefore entitled to summary judgment on plaintiff's deliberate indifference claims against him. As a result, the Court does not address Boyer's remaining arguments.

C. Claims Predicated on State Law

Plaintiff alleges in the complaint that defendant Boyer violated his rights under Article I, § 21 of the Missouri Constitution and §§ 216.450, 216.255, and 221.120, Mo. Rev. Stat. (2000).[3] It

---

"Objection, irrelevant. Subject to the objection, and without waiving same, Defendant states: None." See Pl. Ex. F at 3, ¶ 17.

[2]Article I, § 21 of the Missouri Constitution of 1945 provides, "That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Court notes that §§ 216.450 and 216.255, Mo. Rev. Stat., were repealed by L. 1982, H.B. No. 1196, § A.

16

appears from the complaint, as discussed above with respect to § 221.020, that plaintiff asserts these alleged violations of the state constitution and state statutes subject the defendant to liability under § 1983.

As stated above, plaintiff cannot rely on state laws to support an action against Boyer for the deprivation of his constitutional rights in violation of 42 U.S.C. § 1983, because violations of state statutes do not, standing alone, state a claim under § 1983. See Ebmeier, 70 F.3d at 1013. Nor, as discussed above, can state law be a basis for the imposition of respondeat superior liability under § 1983. See Monell, 436 U.S. at 691. To the extent these claims may be characterized as arising under § 1983, they must fail.

The allegation that a state constitution itself operates to violate a plaintiff's federal civil rights may, in the proper circumstances, state a claim under 42 U.S.C. § 1983. See Byrd v. Sexton, 277 F.2d 418, 424 (8th Cir.), cert. denied, 364 U.S. 818 (1960). Here, however, plaintiff does not claim that Article I, § 21 of the Missouri Constitution is unconstitutional. Rather, plaintiff he asserts that it has been violated. Thus, these are matters of state law and plaintiff fails to state a claim under Section 1983. See Byrd, 277 F.2d at 424.

Plaintiff concedes that he did not plead in the complaint that he was invoking the Court's supplemental jurisdiction over his state law claims, see Pl.'s Mem. Supp. of Resp. to Def.'s Mot. for Summ. J. at 11, ¶ 51 [Doc. 59, Attachment 1], but asserts that he intended to do so and asks the Court to exercise supplemental jurisdiction over his claims under these statutes.

It is within the discretionary authority of this Court to decline to exercise supplemental jurisdiction over state law claims once it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir. 1994) (per curiam). The Supreme Court has stated that if "the federal claims are dismissed before trial . . . the

state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). The Court declines to exercise supplemental jurisdiction over any state law claims which plaintiff may have asserted, and will dismiss plaintiff's state law claims without prejudice.

### D. Doe Defendants

Plaintiff has also asserted claims against fictitious party defendants, identified in the pleadings as "John Doe, Doctor Jefferson County Jail" and "Jane Doe, Nurse Jefferson County Jail." In general, it is impermissible to name fictitious parties as defendants. Phelps v. U.S. Fed. Gov't, 15 F.3d 735 (8th Cir.), cert. denied, 511 U.S. 1114 (1994). "[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (quoting Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985)).

On March 21, 2006, this Court ordered plaintiff to seek leave to file an amended complaint and submit a proposed amended complaint no later than June 26, 2006. (See Doc. 22.) Plaintiff was ordered to include in the proposed amended complaint the names of the persons sued as "John Doe, Doctor Jefferson County Jail" and "Jane Doe, Nurse Jefferson County Jail." In the Order, plaintiff was cautioned that if he failed to meet the June 26, 2006 deadline, the Court would dismiss the claims against these fictitious parties without prejudice.

18

On June 6, 2006, plaintiff filed a motion for leave to file a proposed amended complaint, but failed to attach the proposed amended complaint as ordered. On July 5, 2006, plaintiff filed another motion for leave to file an amended complaint which did have an amended complaint attached. On July 7, 2006, plaintiff filed another motion for leave to file a proposed amended complaint out of time. See Docs. 40, 43. Because plaintiff failed to meet the June 26, 2006 deadline set by the Court in the Order of March 21, 2006, the motions to file an amended complaint were denied.[4] See Mem. and Order of Sept. 26, 2006 at 7-8 [Doc. 57]. Therefore, the Court will dismiss the claims against the fictitious parties without prejudice. See Rule 41(b), Fed. R. Civ. P.

**Conclusion**

For the foregoing reasons, the Court concludes that defendant Boyer's motion for summary judgment should be granted, plaintiff's state law claims should be dismissed without prejudice, and plaintiff's claims against the Doe defendants should be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Glenn Boyer's motion for summary judgment is **GRANTED.** [Doc. 45]

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against defendant Boyer and will dismiss the same without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants "John Doe, Doctor Jefferson County Jail" and "Jane Doe, Nurse Jefferson County Jail" are **DISMISSED** without prejudice.

---

[3]The Court notes that although plaintiff's proposed amended complaint sought to add eight additional defendants, it continued to allege claims against a John Doe and a Jane Doe defendant. See proposed Amended Complaint, attachment to Doc. 40. The proposed amended complaint therefore did not comply with the Order of March 21, 2006, in addition to being untimely.

An appropriate judgment and order of dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __29th__ day of March, 2007.